order, I will hear Karavitis v. Makita U.S.A. Go ahead, sir. John Bochanas, representing the appellant in this matter. May it please the court, this matter comes before the court as a result of the district court's ruling on a motion to exclude expert testimony or expert evidence, and also the grant of summary judgment. The case arises from personal injury sustained by the plaintiff using a handheld circular saw that was manufactured by the defendant, Makita. What's interesting to note is on this Dawbert analysis, which was raised by the defendant on the motion to exclude, together with the motion for summary judgment, it was raised right after the close of discovery. No evidentiary hearing was held with regard to this. Essentially, what they argued with regard to the motion to exclude pursuant to Dawbert is that Mr. Barbee, Mr. Louis Barbee, who was the plaintiff's expert, was not qualified to testify as an expert witness in this case. And also, his opinions were not reliable. What's important to note, though, is under Dawbert that the trial court here ignored the liberal standard to be applied in assessing the qualifications of an expert witness. And I point that out because the trial court went through- The burden of showing that the witness is qualified is on you, isn't it? That's correct, yes. What's important to note, though, is in opposite to the liberal standard to be applied, though, in assessing qualifications here, the district court went to great lengths in making a finding that Mr. Barbee was not qualified. For example, Mr. Barbee has about five decades worth of experience in safety engineering. His degree is in safety engineering, and it's a bachelor of science degree from 1954. The trial court in this case, for example, went and challenged the BS degree, finding in its decision that it tried to go back and look at the coursework that that degree entailed, and went on the computer and references an internet search that the court conducted in terms of assessing the qualifications. Mr. Barbee may well be qualified, but what he presented to the court in terms of his qualifications was remarkably thin. Generally, when you get an expert in this kind of situation, they come in with a great deal more that speaks to the particular issues and so on. And I'm puzzled, and I just wonder whether this isn't responsible for this rather remarkable thing that about half the courts in cases not unlike this have held this expert to be qualified, and about half the courts have not. Well, I think what's significant, though, with reference to how other courts have treated this expert, is specifically in Schroeder versus McKee, the corporation, which was a district court case out of Vermont. That the court there specifically found that Mr. Barbee was qualified to testify as an expert witness. And not only was he qualified to testify as an expert witness as to a McKee the product, but it was the exact same model circular saw that's at issue in this case that the court found he was qualified to testify about. And he's indicated throughout the deposition, his deposition, and also in his report that he's a member of numerous industry standard committees, including UL committees. And that the committees that he's members of include committees relating to the safety standards of handheld circular saws. So with regard to the qualification aspect of this matter, where the court was in error here, the court analyzed Mr. Barbee's qualifications, I think, improperly under a scientific standard. Rather than examining his credentials and qualifications as in his methodology, also as based on his experience and knowledge and experience in the field. So again, the court's reference to peer reviews, publications, that is not the type of analysis- How much room do we have in reviewing a district court's decision under Dauber on this? Well, I understand we have the discretionary standard involved, but it's our claim that it was- No, obviously you're claiming that it's an abuse. But just how far do we go in a situation where different courts have decided differently to say, well, this is an abuse or this is not? How much can we really say, would I have held that this guy- Well, I think under Dauber and the case law describing the liberal standard to be applied in assessing qualifications, I think that it's clear error here on the part of the district court as to the analysis that she performed in determining the qualifications of the expert in this case. So again, that's based upon the liberal standard that was supposed to be applied in assessing qualifications. Similarly, in this case, in assessing the reliability of Mr. Barbee, Mr. Barbee's opinion was excluded based on the district court's challenge as to the reliability of it. And again, the district court improperly examined it under an analysis of a technical analysis. But again, it's not a scientific technique which was at issue here. It was an industry standard that exists in terms of a riving knife. And the theory of the expert witness in this case was based upon an existing safety device that the plaintiff's claim was not used on this circular saw that would have prevented the injury. The reliability issue, in this case, as examined by the district court, the expert's claim was excluded under the reliability aspect. And we challenge that on appeal here, because of the fact that Mr. Barbee's opinion was that there was an existing safety device that the defendant actually did use on saws that it marketed. And that this safety- That it marketed in Europe? Correct, and also there was on the record testimony or evidence, I should say, that the safety device was also previously used in the United States, going back to 1971 by the Singer Company. And with regard to the reliability standard here, again, it's based upon prior knowledge in existing safety devices which have been, or that is in existence in the marketplace. Now, what the district court then did, and I see I'm almost out of time here, but on the summary judgment, although the district court decided that expert opinion evidence might not be necessary for a product's liability claim. It went and analyzed the plaintiff's claim on summary judgment, but it used the exclusion of the expert testimony as a crutch in granting the summary judgment. And what's significant to note, I think, on the summary judgment, though, is the fact that the district court and analyzing the safety defect or the safety design defect in the saw indicated that there was nothing in the record to support the claim that there was an alternative feasible safety device. And it references an internet information from Makeda in which it specifically indicated that there is a European saw marketed by Makeda with the device. But what the district court ignores is the fact that on the record, as presented in summary judgment, there was deposition testimony of the defendant's expert witness and also of the defendant's field training representative, who both testified in their depositions that Makeda markets such a saw with a riving knife. And the trial in the district court ignored that evidence in analyzing summary judgment. Did you rely on that in your 56.1 statement? Yes, we did, in terms of- Where was that? Excuse me? Where? Show me that. Well, I believe in the, well, it was submitted in the underlying case to the district, in the district court as to the- You're saying it was somewhere in the record, but did you rely on that? We did, and as we provide the full transcripts with our briefs to the trial court in support of our objection to the motion for summary judgment. So the complete deposition transcripts of both individuals, the defendant's expert witness was presented together with the deposition transcript of the- Yes, yes, and we also, and it's cited in our brief also the- You're talking about Heffner? Are you talking about Heffner's deposition? Yes. Yeah. Yes. And you're saying that you made reference to Heffner's deposition in your argument against summary judgment. That's correct, and that's why the entire, that's why the transcript was presented and also the transcript deposition testimony of Mr. Hyde also. All right, thank you. Thank you very much. We'll hear from Mr. Serrata. Thank you, Your Honors. May it please the court, I'd like to begin with the, where my brother counsel began, and that is on the lack of an evidentiary hearing. Just because we don't get a sub-reply, I just want to point out that that was raised for the first time in the reply brief, that there was no evidentiary hearing below. Also not raised below. Never a request for an evidentiary. Never a request for an evidentiary hearing. On the admissibility of the expert testimony, I think the first place I'd like to start is on the reliability. Because that is, I think, where the district court was on very, very firm ground. And if there's one thing, there's been references this morning to peer review and maybe not all the Daubert factors are appropriate in every case when you're doing a reliability assessment. And fair enough, maybe peer review is not the be all, end all of this sort of expert. But what is the be all, end all in a product liability case usually, especially when you're applying a risk utility balancing between two products, is testing. That you would have testing of the product. And even without, let's just take testing off the- Well, see, I want to cut through that because we're talking about Connecticut. And we're talking about Connecticut risk utility, which is very different from risk utility in any number of other states. I mean, if you read Lifflock, and if you read Isarella, and I've read them, and read them, and teach them, and know them backwards and forwards. Connecticut specifically rejects the first restatement. It puts in a risk utility test, which is far more favorable to plaintiffs than almost any other state. If I were a product manufacturer, I'd much rather be in New York or never been in Connecticut in this, as you well know. And it does not require, despite your suggestion of negative pregnant experts, in either the consumer expectation or in the risk utility. So the question really is, is there evidence here of an alternative that without worrying about cost. Because Connecticut has expressly said we don't need to worry about cost. But is there evidence of an alternative on the basis of which a jury could say that a product defect was there? Sure, I would dispute a couple of the premises of your question. I do think in a case like this, you do have to have expert testimony because of the background principle. This is something that defense attorneys are trying very, very hard with the help of third restatement to convince courts in states which have rejected. And you've gotten that far in medical, and you've gotten fairly far in pharmaceutical. But you haven't gotten that far yet in states like Connecticut in other products. So if I could just bracket that and get to your real question, which is without expert testimony, where is the evidence that would get to the jury, and it's not here. Because what you have, I think at best, is some evidence to suggest that you can get a circular saw with a riving knife in Europe. And in the United States, you basically can't get a circular saw with a riving knife. So without- That fact does not mean that it isn't defective. The fact that it isn't available here, because your producer chooses not to make it available here, doesn't mean that there isn't a defect in not making it available in a state. Like, I mean, you read what the soon-to-be Chief Justice of Connecticut, who wrote the opinion in Blythlock and so on, said, and he's saying that. But my question is, is there evidence that the riving knife, that the thing with the riving knife is sufficiently safer so that it creates it? Right, so their burden on summary judgment would be to point to some evidence that would permit an inference, not just that there are two alternative designs in the world that exist, but rather that the one that is used here in the United States is unreasonably dangerous. So where is the evidence of that if the expert is off the table? It is not there. What you see in the brief- The evidence is to the contrary. The evidence is to the contrary, exactly, Your Honor. So what you see in the appellant brief, I think, is instructive on this point. If we're in a world, there are alternative arguments, summary judgment, even if the expert was properly excluded. And then there's a bunch of citations to the expert report, to things that are in the expert report. And then in the next paragraph, and counsel mentioned it, there's a discussion of the defense expert. That the defense expert made certain statements at his deposition that would raise a fact question. Two points on that. As Your Honor noted, that is not in the 56.1 statement. There is no reference to the expert in the 56.1 statement. That's not just a technicality. That has a real purpose for judicial management, which is district judges, busy district judges are not required to comb through the record to find factual disputes that aren't pointed out to- Your friend said I made it generally available as part of the response to summary judgment. I think it was, well sure, the whole transcript was there. Maybe that we put it in for a completely unrelated point as an exhibit. That's my recollection. I'm still, even assuming the statement by Huffner is there. And assuming that it is relevant that many years later, these are available, and when this saw was prepared, that these saws with revving knives are available in Europe. Which I think is relevant to whether they could have been made available and whether there's a defect. It's not directly there, but it just, it is. I think the court was wrong in saying that because it's 18 years later or 15 years later, it isn't relevant at all. But what evidence is there in this case at all, that the saw with revving knives is actually safer than the saw without them? None. No- That for me is, and what I hope in rebuttal, opposing counsel will come to, because Connecticut has said we're willing to look at things. We're willing to look at things without experts. We're willing to look at things without knowing cost. But they're still wanting to say, is this defective because there is something which would be better. So to get down to brass tacks, no, there is no such evidence. The evidence that is cited to support that proposition is our expert. If you just read the full two pages of the deposition transcript that's cited, it's our expert saying, well, sure there are riving knives in Europe. The reason why products are not made, these circular saws, we're not talking about stationary table saws, but circular saws that are portable, that people are carrying around, are not made with riving knives, is that on balance they make the product more difficult to use and less safe. So if we're in a world where the expert is properly excluded, that's the only evidence of record on that point, and so there is no evidence to permit an inference of unreasonable dangerousness. If I could just go to the kind of broader Connecticut law point very briefly, Your Honor. I don't think it's true that you would read Bifolk, and Bifolk and Nizzarelli should be read to mean that it's just sort of a get to the jury, never need an expert witness as the state of the law. I would say never need an expert witness. I said an expert witness may not be needed under the risk utility test in Connecticut if the circumstances are right. If the circumstances are right, and I think the standard that you would apply there is, is this an issue that is beyond the ordinary, now this is just sort of bedrock Connecticut tort law. Is the question one that's beyond the ordinary knowledge and experience of a lay jury? That's what this is, because a lay jury, if the only evidence in the record is you can get them with riving knives in Europe, you can't get them with riving knives in the United States, how is a jury supposed to do that balancing? How is it supposed to assess whether the product is unreasonably dangerous without the riving knife? Without an expert to help on that issue. You could perfectly well have statistical evidence that shows that there are fewer accidents in one than in the other without having an expert. That is, you could have evidence that showed that one was safer than the other. I'm not saying that it is here. That's a fair point. I guess in a hypothetical case where you could get that in without an expert, you might have that. Again, that is not the case here. Unless the court has questions on other aspects, the failure to warn claim, which my brother counsel did not get into in the opening argument. Unless the court has questions on that claim, I think I'll just take it on the papers and thank the court. Thank you. Mr. Bucharest. In response to the question as to what's in the record as to what makes this saw defective, because there's something better, so that's essentially, is there an alternative, feasible, safe design? There was plenty in the record. Obviously, we look at it in two ways. One, from what Mr. Barbie presented, which was excluded, and which was- If Mr. Barbie was improperly excluded, then that is enough. We'd remand and send it back for that. So let's talk about what there is in the record on the assumption, which we may be wrong, that we cannot reverse that decision. Sure. So what's in the record is the admission on the part of the defendant in the manual that went with this particular model saw that there's a safety concern of kickback. So they acknowledge that a dangerous condition exists when the use of the saw, which is kickback, the saw coming out of the cut and striking the operator of the saw. So, right. I mean, the safety manual, which may or may not have been read or may not have been followed, said it's dangerous. Right. So that's the first, right, that's correct. But that's the first part of it. The second part is, under the examination of the product's liability law, was it unreasonably dangerous and therefore defectively designed, I should say, because it failed to incorporate additional safety features such as, in this case, a riving knife. And that's where this saw, and it presents a question of fact. Let me just, there are two ways in which you could show that. You could show it in Connecticut by showing that it is sufficiently dangerous. I mean, really so dangerous that it doesn't matter if an alternative is there. And there, Connecticut is, again, very strongly pro plaintiff. It allows that without having an actual alternative in existence. But I don't see in the record anything which says that a saw without riving knives arrives at that level of danger. The other way you can show it is by showing that there are alternatives or there could be made alternatives, even if they're not in Connecticut but are in England, that are safer from this point of view. But I don't see evidence that suggests that the presence of riving knives makes it safer given the dangers of riving knives. Well, in the record, there was presented the defendant's own documents from their saws that they market that indicates that they have riving knives that's an anti-kickback device. Well, that's exactly what it's intended to do, is to prevent kickbacks. Yet the defendant, on the other hand, says that, look, it's a dangerous condition caused by kickback. So on the flip side of it, you have their own admission that they market saws, which was presented, such as the- Circular saws. Yes. And we presented that their own documents from Europe, where they market the saws, where it specifically indicates as a promotional part of literature next to the saw picture on the circular saw, that the riving, it has a riving knife, which is an anti-kickback device. So based on that, particularly in the summary judgment stage, looking at the pleadings favorable to the plaintiff, that is something that's on the record that could be determined that there is something better out there in terms of the design of the saw to prevent the injury, which they acknowledge could occur. There is something out there that reduces this risk. But is there anything there that says that this, that reduces this risk, doesn't create other risks that are at least as sufficient? Well, with regard to any other risk, I don't believe the record is sufficient to claim that a riving knife would create a risk that they acknowledge exists, which is kickback. And that's what we're talking about here. The risk is kickback. So there's nothing that was presented, again, on the moving party, on summary judgment, that they would have the burden of proving or stating that, that there's no question of fact that riving knives causes risks in terms of kickback. It's well, it's the opposite. They didn't satisfy the burden on summary judgment to claim that a riving knife, which they incorporate on their own products, causes kickback. In fact, their own statements in their marketing material indicates in Europe that the riving knife prevents kickback and it's advertised as, well not advertised, it's stated as so on the document that we presented on the record before the district court. The district court excluded part of the European thing as being not authenticated. What is your answer to that? Well, again, we would disagree with that. The district court on the one hand says that it's not authenticated, yet the district court goes to the Internet to challenge the educational credentials of the expert witness, Mr. Barbee, by attempting to go to the Illinois Institute of Technology website, which it cites in its brief, in its memorandum of decision, in terms of trying to determine the course work that he took. And it might be more slanted towards fire safety rather than safety engineering. So I believe that's improper on the part of the trial court in terms of having it both ways. So- Thank you, Mr. Contreras, very much. We've given you extra time. Delighted to do it. Pleased to see you both, and we'll reserve decision.